EHLERS, Administratrix, Appellant, vs. AUTOMOBILE LIA-
BILITY COMPANY, Respondent and Appellant, and
another, imp., Respondent.

*May 28—June 25, 1919.*

*Municipal corporations: Automobile operated "in the service of a
common carrier:" Use of streets: Accident in street: Carry-
ing passengers: Indemnity bond: Amount of recovery for
death: Damages to estate: Evidence: Damages to two persons:
Amendment of answer: Laches: Trial: Special findings:
Effect of inconsistency: Subdivision of inquiries: Discretion
of court: Review.*

1. An automobile is being operated "in the service of a common
   carrier," within the terms of an indemnity bond, not only when
   carrying passengers on its route, but when running to a repair
   shop for repairs to enable it to continue its service as a com-
   mon carrier.
2. In an action against an automobile owner and his insurer, the
   court properly denied the application of the defendant indem-
   nity company to amend its answer to show that the car in
   question was not covered by the indemnity bond, such applica-
   tion not being made until the trial was almost completed and
   no claim being made that the defendant company did not know
   such fact at the commencement of the trial.
3. In an action by a widow for the death of her husband, a finding
   of the jury that the damages to his estate, exclusive of pain
   and suffering, amounted to $4,000, are *held* not to be sustained
   by evidence showing that there was expended for medical at-
   tendance, nurses, and funeral expenses $779 and that the loss
   of wages by deceased prior to his death did not exceed $60.
4. Where damages to the deceased and his estate and also to the
   widow for her pecuniary loss under secs. 4255, 4256, Stats.,
   were shown, it is *held* that there were "damages to two per-
   sons" within the meaning of the bond given under sec.
   1797—63, conditioned for payment of damages not exceeding
   $2,500 to any one person or $5,000 for any one accident that
   may be recovered against a vehicle operator while in the ser-
   vice of a common carrier.
5. Where special interrogatories were submitted to the jury, its
   findings that the defendant whose automobile struck deceased
   used ordinary care in operating it in a crowded street and that
   he failed to exercise ordinary care in looking ahead to see who
   might be there, were so manifestly inconsistent as to render
   a new trial necessary.

6. The form of a special verdict rests in the sound discretion of the trial court, and that discretion will not be interfered with so long as the issues of fact in the case are covered by appropriate questions.

7. Where special interrogatories were submitted to the jury, it is discretionary with the trial court to determine whether an inquiry as to whether the defendant, whose automobile caused the death of the deceased, was guilty of a want of ordinary care in operating his automobile, should be subdivided into inquiries whether the city ordinances as to lighting and speed were disobeyed and whether rain and other conditions interfered with defendant's operation of his car.

APPEALS from an order of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed on both appeals.*

John Ehlers, the husband of the plaintiff, was run over by an automobile owned and operated by the defendant *Gold* and suffered injuries from which he afterwards died. This action is brought to recover upon two causes of action: first, the cause of action accruing to the deceased and his estate for pain and suffering, medical and funeral expenses, etc., and second, the cause of action accruing in favor of the widow for her pecuniary loss resulting from her husband's death under secs. 4255, 4256, Stats. (Lord Campbell's Act).

The defendant *Gold* owned and operated a Ford car at the time, which was licensed as a common carrier over certain routes in the city of Milwaukee, and the *Liability Company* had given an indemnity bond as required by sec. 1797—63, Stats., conditioned that it would "pay all damages, not exceeding $2,500 to any one person, or $5,000 for any one accident that may be recovered against the operator of the vehicle" by reason of the negligent use or operation thereof "while said motor vehicle is being operated in the service of a common carrier as defined by chapter 546, Laws of Wisconsin, 1915" (secs. 1797—62 to 1797—68; Stats.).

At dusk on the evening of October 12, 1916, the defendant *Gold* was driving his automobile eastward on North ave-

nue in the city of Milwaukee, and the deceased, a foot passenger walking northward, was crossing said North avenue at its intersection with Hubbard street and on the east side of said last named street. A rain was falling, the streets were slippery, and the wind-shield up. The deceased was carrying an umbrella, the defendant *Gold* was driving astride of the south rail of the south street railway track on North avenue, and did not see the deceased till about eight feet distant, at which time the deceased was about to step onto the said south rail of the street railway track. *Gold* thought he was too near the deceased to sound his horn or stop his car and that the only thing he could do was to turn out to the north, which he did, but did not succeed in turning out far enough to avoid striking the deceased. The jury rendered the following special verdict:

"(1) Did the collision between the automobile operated by the defendant *Gold* and the deceased, John Ehlers, happen before or after 5:45 o'clock p. m. of October 12, 1916? *A.* Before 5:45 o'clock.

"(2) At and just prior to the collision were the headlights on the front of defendant *Gold's* automobile lighted so as to give a reasonably bright light in the direction in which said automobile was going? *A.* No.

"(3) If you answer question No. 2 'No,' then answer this question: Was such failure to have the headlights so lighted at that time and place a proximate cause of the injuries to the deceased? *A.* Yes.

"(4) At and just prior to the collision was defendant *Gold's* automobile operated at a speed in excess of fifteen miles per hour? *A.* No.

"(5) If you answer question No. 4 'Yes,' then answer this question: Was the operation of defendant *Gold's* automobile at said time and place at a speed in excess of fifteen miles per hour a proximate cause of the injuries to the deceased? (No answer.)

"(6) Did the defendant *Gold,* at and just prior to the collision, fail to exercise ordinary care to ascertain whether any person was crossing North avenue so as to come within the course of his automobile? *A.* Yes.

"(7) If you answer question No. 6 'Yes,' then answer this question? Was such failure on defendant *Gold's* part to use ordinary care a proximate cause of the injuries to deceased? *A.* Yes.

"(8) Did the defendant *Gold* fail to use ordinary care to avoid a collision with deceased after the deceased reached the point where, in the exercise of ordinary care, he could have been discovered by the defendant *Gold?*    *A.* No.

"(9) If you answer question No. 8 'Yes,' then answer this question: Was such failure on the part of the defendant *Gold* to use ordinary care a proximate cause of the injuries to the deceased?    (No answer.)

"(10) Did the defendant *Gold* fail to exercise ordinary care in the operation and management of his automobile at and just prior to the time when the deceased was struck thereby?    *A.* No.

"(11) If you answer question No. 10 'Yes,' then answer this question: Was such failure on the part of defendant *Gold* a proximate cause of the injuries to the deceased? (No answer.)

"(12) Ought the deceased, in the exercise of ordinary care, to have seen the automobile in time to have avoided the collision?    (No answer.)

"(13) If you answer the twelfth question 'Yes,' then answer this question: Did the failure of the deceased to see the automobile in time to have avoided the collision proximately contribute to produce his injuries?    (No answer.)

"(14) Did any want of ordinary care on the part of the deceased proximately contribute to produce his injuries? *A.* No.

"(15) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess such damages:

"(a) Damages to the estate of the deceased exclusive of pain and suffering?    *A.* $4,000.

"(b) For pain and suffering?    *A.* $1,000.

"(c) For pecuniary injury sustained by deceased's widow as a result of the death of John Ehlers?    *A.* $774."

The circuit judge held that the damages awarded to the estate of the deceased under subdivision (a) of the fifteenth question were excessive and, without considering any other

question, set aside the verdict and ordered a new trial. From this order both the plaintiff and defendant *Liability Company* appeal.

*Chas. T. Hickox* of Milwaukee, of counsel, for the appellant *Ehlers.*

For the *Automobile Liability Company* as appellant there was a brief by *J. Elmer Lehr,* attorney, and *Edgar L. Wood,* of counsel, both of Milwaukee, and oral argument by *Mr. Wood.*

For the respondent *Gold* there was a brief by *S. R. Simon,* and oral argument by *H. B. Walmsley,* both of Milwaukee.

Winslow, C. J.   The defendant *Gold* was not carrying passengers on his route at the time of the accident, but had quit for the day and was driving his machine to a repair shop to have some necessary repairs made.   By reason of these facts it is claimed by the defendant *Liability Company* that the machine was not being operated "in the service of a common carrier" at the time of the accident, and hence that there is no liability on the bond.

We are well satisfied that such a construction of the bond would be entirely too narrow.   *Gold* was not going on a private errand nor operating his machine for any private purpose at the time, but was taking it to a repair shop to have it repaired.   Reason and good sense seem to us to require the holding that such a machine is being operated "in the service of a common carrier" not merely while it is carrying passengers on its route, but while it is running to a repair shop to receive the repairs necessary to enable it to continue its service as a common carrier.

Near the close of the trial the defendant *Liability Company* moved to amend its answer by withdrawing certain admissions in the answer, and offered to prove that the defendant *Gold* sold the car covered by the indemnity bond some six weeks before the accident and purchased a new car which he was using at that time and which was not covered

by the indemnity bond in suit.   The court denied the motion, partly on the ground that the application for the amendment was not timely, and we see no good reason to reverse this ruling.   Apparently the defendant knew the alleged facts for a considerable time before the trial of the action began, at least no claim was made that its knowledge had been recently acquired, and it allowed the admission in the answer to the effect that its bond covered the machine used by *Gold* to stand until the trial of the case was almost finished.   We cannot say that under the circumstances it was an abuse of discretion to deny the motion.   It is quite apparent that there was no proof to justify the finding of the jury that the damages to the estate, exclusive of pain and suffering, amounted to $4,000.   The evidence was not in dispute on this question and showed that there was expended for medical attendance, nursing, hospital charges, and funeral expenses $779, and that the loss of wages during the five weeks which the deceased lived after the accident was about $50 or $60.   It seems very apparent that the jury by mistake transposed the answers to subdivisions (a) and (c) of the fifteenth question.   The plaintiff argues strongly that the mistake is so obvious that the court would be justified in transposing the figures and entering judgment on the verdict as so amended.   We do not find it necessary to decide this question because of other defects in the verdict, to be now considered, which seem to us to make it fatally inconsistent.   It may be said in passing, however, that, conceding that the transposition could not be made, still there seems no reason why the plaintiff should not have been given the option (if the verdict were otherwise sufficient) to remit from the $4,000 item enough to reduce it to $779, the amount undisputedly proven by the evidence, and to take judgment for the sum of the three items after such reduction.

In our judgment there were damages to two persons here arising out of one accident, hence the limit of recovery would be $5,000 under the wording of the bond.

The difficulty which we find with the case is the manifest inconsistency of certain vital findings.

The jury found by their answer to the first question that there had been no violation of the city ordinance with regard to the lighting of headlights, because the ordinance only required such lighting on the night in question at 5:45 p. m. and the accident happened before that hour.

By their answer to question 4 the jury found that *Gold* had not violated the speed limit fixed by the city ordinances. This leaves but one finding of negligence in the verdict, namely, the finding in answer to question 6 to the effect that *Gold*, "at and just prior to the collision," failed to exercise ordinary care to ascertain whether any person was crossing North avenue so as to come within the course of his automobile. This failure, being found by the answer to the next question to be a proximate cause of the injury to the deceased, would doubtless amount to actionable negligence, but the difficulty is that it is neutralized by the answers to questions 8 and 10, and especially the latter. If *Gold*, at and just prior to the collision, failed to exercise ordinary care to ascertain whether any person was crossing North avenue so as to come within the course of his machine, he necessarily thereby failed to exercise ordinary care in the operation of his automobile, because the keeping of a lookout for people who may be in the way is a part of the operation of the automobile. It could not be said that a man used ordinary care in the operation of an automobile in a crowded street if he failed to exercise ordinary care in looking ahead to see who might be in the way. This seems certain. This inconsistency is fatal to any recovery by the plaintiff and makes a new trial necessary. The plaintiff argues that the evidence establishes the negligence of *Gold* as matter of law, but we have not been able to reach that conclusion.

The inconsistency in the verdict brings sharply to the mind the danger always present when a special verdict is long and complicated, namely, the danger of a mistake. The writer

has been on the trial bench himself and has struggled with the framing of special verdicts and knows that it is not always an easy task. What is said now is said in no spirit of fault-finding or lecturing of trial judges in the performance of their difficult duties, but simply with hope of assisting them if possible. The questions at issue in the present case were not numerous or complicated. There were four fundamental inquiries, viz.: (1) Was *Gold* guilty of want of ordinary care in the operation of his automobile? (2) If so, was it the proximate cause of the accident? (3) Was the deceased guilty of contributory negligence? and (4) What damages resulted? Doubtless a verdict composed of these four questions and their answers would cover the case. *Anderson v. Sparks,* 142 Wis. 398, 125 N. W. 925; *Guillaume v. Wis.–Minn. L. & P. Co.* 161 Wis. 636, 155 N. W. 143. The form of the verdict rests in the sound discretion of the trial court, and that discretion will not be interfered with so long as the issues of fact in the case are covered by appropriate questions. *Anderson v. Sparks, supra.* In the present case it would be discretionary with the trial court to determine whether the first inquiry should be subdivided so as to ascertain by separate questions and answers whether the city ordinances as to lighting and speed were disobeyed, and whether, in view of the rain and other conditions at the time, *Gold* failed to exercise due care in operating his machine as he approached the crossing. Any further multiplication of questions becomes practically a cross-examination of the jury on purely evidentiary matters.

*By the Court.*—Order affirmed on both appeals. No costs to be taxed except the fees of the clerk of this court, which are to be taxed and paid by the respondent *Liability Company.*