## COMMERCIAL STANDARD INS. CO. v. BACON et al.

### Civil Action No. 1552.

District Court, W. D. Oklahoma.
March 28, 1945.

Duke Duvall, of Dudley, Duvall & Dudley, of Oklahoma City, Okl., for plaintiff.

William R. Herring, of Oklahoma City, Okl., and Sam Wilhite, of Anadarko, Okl., for defendants.

VAUGHT, District Judge.

The plaintiff, an insurance company, issued two policies of insurance to the defendant A. F. Wass in connection with the operations of A. F. Wass as a Class B motor carrier under a permit from the Corporation Commission of Oklahoma. The first policy, MC 167532, was filed with the Corporation Commission as provided by law. The second policy, issued and delivered to A. F. Wass, was a duplicate original of the first policy except there was an additional contractual provision in the form of an endorsement increasing the coverage as between the plaintiff and the defendant Wass from the amount provided for in the policy filed with the said commission to $25,000. The policies were identical except as to the amount of the coverage.

The parties have stipulated the facts which are substantially as follows: On July 3, 1944, the defendant Wass owned a Chevrolet tractor and semitrailer tank which tank was of an oval shape, made of metal and had a capacity of approximately 2872 gallons and was used for the purpose of transporting petroleum products. On the rear of the tank was located an outlet valve by means of which the tank was emptied. A leak developed, prior to the accident involved herein, around or near this outlet. Upon the development of the leak on July 3, 1944, the tank was taken to the shop of the Pioneer Equipment Company at Cyril, Oklahoma, for the purpose of having the outlet valve repaired to eliminate the leak. Immediately prior to taking the trailer to the Pioneer Equipment Company, the trailer had been emptied of its contents and steamed at the plant of Anderson-Prichard Company located about a block and a half away, which process had required a period of between four and five hours. This was done for the purpose of cleaning out the tank preparatory to the welding necessary to the repair of the outlet valve. Don Bacon, an employee of the Pioneer Equipment Company undertook to do the welding and while doing so, an explosion occurred within the tank, blowing out the backend of the tank and causing injuries resulting in the death of Don Bacon. The explosion was the result of the heat applied by the electric welding torch upon the outlet valve or area surrounding it, which caused gas fumes or vapors within the semitrailer to explode.

Plaintiff seeks a declaratory judgment determining the rights, obligations and liabilities of the parties to the cause, and a decree adjudging that the plaintiff has no obligation or liability to the defendants under the policies of insurance, on account of the accident to and the death of Don Bacon.

The plaintiff sets forth and argues three propositions:

1. An insurance company may write both statutory and non-statutory coverage to a motor carrier, which coverages may be included in a single contract or in two separate contracts. Where there is one contract in the form of a policy filed with the Corporation Commission, the private contract between the insurer and the motor carrier is contained in the policy proper, and the statutory coverage is contained in the statutory endorsement.

2. The insurer is liable under statutory motor carrier policy only for accidents resulting from negligent "operation" of carrier's vehicle upon the streets and highways, pursuant to its permit.

3. The accident involved here is not covered by the private insurance contract because explosions of this type are expressly excluded, and also such accidents are not within the scope of the insuring clause.

Since both policies contain the statutory Form E endorsement required by law of a motor carrier and the difference in the policies appearing to be in the amount of

coverage, the question to be determined is whether the policy filed with the Corporation Commission covers the accident resulting in the death of Don Bacon. To determine this we must examine the policy and the decisions.

■ The policy must be construed, under the laws of Oklahoma where it was issued, most strongly against the insurer. Utilities Insurance Company v. Potter et al., 188 Okl. 145, 105 P.2d 259, 263:

"The purpose of the statute requiring the taking out of a policy of liability insurance as a condition of the granting of a certificate for passenger carrying vehicles on improved public highways is the protection of passengers and members of the public who may be injured by negligence of the bus operators and a policy issued for such purpose must be construed most strongly against the insurer. · J. C. Ott v. American Fidelity & Casualty Co., 161 S. C. 314, 159 S.E. 635, 76 A.L.R. 4."

The language used in Form E endorsed on the policy, so far as it is pertinent, is as follows:

"The policy to which this endorsement is attached is written under and pursuant to the provisions of the Laws of the State of Oklahoma requiring the same and it is to be construed in accordance therewith and the rules and regulations of the Corporation Commission of Oklahoma and implies an acceptance of such rules and regulations, and is payable to the State of Oklahoma for the benefit of all persons who may suffer personal injuries, including death, or property damage * * *, due to any negligence of the assured, his/its agents, employees, or representatives in the operation or use of any motor vehicle under any permit or certificate of public convenience and necessity granted by or coming within the jurisdiction of the Corporation Commission of the State of Oklahoma.

"In consideration of the premium stipulated in the policy to which this endorsement is attached the insurer hereby waives a description of the motor vehicles operated or used in said operation and agrees to pay any final judgment rendered against the insured for personal injuries, including death, or damage to property of others, * * *, due to the negligence of said assured, his/its agents, or employees, or representatives, in the operation or use of any motor vehicle, * * *.

"No condition, provision, stipulation or limitation contained in the policy or any other endorsement thereon, or the violation of any of the same by insured shall affect in any way the right of any person * * *, injured in his person or property by the negligence of the insured, his/its agents, employees or representatives, or relieve the company from the liability provided for in this endorsement, or from the payment to such person of any such judgment, to the extent and in the amounts set forth in the schedule shown herein; * * *."

Under the schedule we find the following:

"The liability of the insurer extends to such losses, damages, injuries, or deaths *whether occurring on the route or in the territory authorized* to be served by the'insured or elsewhere." (Emphasis ours.)

"Any provision either in the body of the policy to which this endorsement is attached or in any other endorsement thereon or attached thereto in conflict with or contrary to the provisions of this endorsement shall be deemed to be cancelled hereby."

■ The language of Form E speaks for itself. It controls, in the event any other provisions in the policy are in conflict with its provisions, or contrary thereto. As was said in Continental Casualty Company v. Shankel, 10 Cir., 88 F.2d 819, 822:

"The language of Form E is broad and all inclusive excepting from its coverage only the holder of the certificate of convenience and necessity. * * *

"Form E was adopted as a regulation by the Corporation Commission to effectuate the provisions of section 3697. It has been in continuous use since its adoption. The statutory provision has been amended twice, yet the Legislature has not seen fit to disapprove or restrict the provisions of Form E. This is persuasive evidence that the Legislature approved the regulation and the administrative construction of the statute manifested therein."

Under this regulation we find the phrase "operation or use" employed consistently. The plaintiff contends that it is liable only for injuries resulting from negligent "operation" of the motor carrier's vehicle upon the streets or highways. But the policy provides under the Form E endorsement that it covers injuries to "all persons who may suffer personal injuries, including death, * * * due to any negligence of

the assured, his/its agents, employees or representatives in the *operation or use* of any motor vehicle under any permit or certificate of public convenience and necessity granted." The language thus employed not only requires us to look well to the definition of the term "operation" but also to the term "use."

In American Automobile Insurance Company v. Taylor et al., N.D.Ill., 52 F.Supp. 601, 602, the court had under consideration the term "use" and quoted from Brown v. Kennedy, Ohio App., 49 N.E.2d 417, 418, as follows:

" 'In the instant case the terms in question are "use" and "using". Now a car would be used by a person, whether it was operated personally or through the services of another. If the insurer meant that liability should only attach when it was being operated or driven by the owner or some one with his consent, and it is claimed the word "used" includes the term "operated"—then the insurer should have employed the word carrying in its meaning the narrower limitation of liability.

" 'The word "use" is defined as the "purpose served—a purpose, object or end for useful or advantageous nature." (Oxford English Dictionary.)

" 'This implies that the person receives a benefit from the employment of the factor involved. It is this benefit, purpose, or end which defines the use. I use a chisel to chip out a piece of wood. The removal of the wood is the use to which I put the tool. I use a book, for the purpose of transmitting the thought of the author to my brain. It is used as a vehicle for thoughts or ideas. I use a pen or pencil to draw a sketch or write a letter. The pen or pencil is thus an instrument by which I receive the benefits of having the diagram or thought in my brain impressed upon the paper. I employ an automobile for the purpose of transportation. I use it for the purpose of going from here to there. It is immaterial as far as this use, this benefit, this purpose, this end is concerned, whether in so acquiring this benefit, I actually operate the driving mechanism of the vehicle or employ another to do it.

" 'Certainly, no one would say the owner himself was not using his automobile because his chauffeur operated the vehicle. How then does use by a permittee become limited to a case only where such permittee operates the driving mechanism of the vehicle?' "

In American Automobile Insurance Company v. Taylor, supra, Elsworth E. Taylor, the insured, owned and operated the car in question. He permitted his wife, Hazel Taylor, to drive the car as a family car, but strictly forbade his son, Elsworth Wayne Taylor, to operate the car under any circumstances. The battery in the car had become dead and Nast, the operator of a service station, had been summoned to remove the battery and recharge it. He placed a rental battery in the car and took the dead battery to his station to recharge it. Later, Hazel Taylor drove the car to the service station to have the rental battery removed and the recharged battery reinstalled. Elsworth Wayne Taylor accompanied her. After the recharged battery had been installed, Nast requested Elsworth Wayne Taylor to start the motor. Mrs. Taylor said she would start it, but before she could do so, Elsworth Wayne Taylor started the motor. The car lunged forward and struck and injured a Mr. Barassi. After quoting from the case of Brown v. Kennedy, supra, the court said at page 603 of 52 F.Supp.:

"Applying this broad definition to the same terms as they appear in plaintiff's policy, it seems clear that the car was actually being 'used' at the time of the occurrence on December 28, 1941, by the owner, Elsworth E. Taylor, to have placed therein his battery which had been recharged and repaired at his direction. It was necessary for the car to have a battery in order to operate. The car was the property of Elsworth E. Taylor; he had directed the recharging and replacing in the car when recharged of his battery. Anyone carrying out this direction was 'using' the car for and on behalf of the owner, Elsworth E. Taylor."

One of the cases often cited upon the propositions before the court in the instant case is Christian et al. v. Royal Insurance Company, Ltd., et al., 185 Minn. 180, 240 N.W. 365. This was a suit brought against the insurance company to recover amounts necessarily expended in defending certain claims against the plaintiff for damages which the insurance company had refused to defend, claiming the accident was not covered by the insurance policy. In the policy, the company agreed to indemnify Christian and any other person or persons legally operating the truck with his permission, or legally responsible for its operation, against loss arising out of liability for bodily injuries sustained by any

person or persons by accident, whether resulting fatally or otherwise, by reason of the ownership, maintenance or use of the truck.

In June, 1927, Hahn purchased a tractor from Christian and in part payment therefor Christian agreed to accept an old tractor belonging to Hahn. Christian directed Rennecke to deliver and he did deliver said new tractor to the farm owned by Hahn, by means of the auto truck covered by the insurer upon which the tractor was carried. Rennecke unloaded the tractor at the farm and loaded the old tractor on the truck. The truck was standing on soft ground and, becoming mired, Rennecke was unable to get it out under its own power. Rennecke thereupon attached the new tractor to the front of the truck, using the new tractor to assist him in extricating the truck. Rennecke was negligent in the manner in which he attached the tractor to the truck, and in the operation of attempting to extricate the truck, the tractor was overturned, pinioning Hahn to the ground and injuring him, from which injury death resulted. The court, in holding that the insurance company was obligated to defend the action, said (185 Minn. 180, 240 N.W. page 366):

"These and other allegations show that the operation described in the complaint was one undertaken wholly and solely for a purpose coming within the provisions of defendants' policy, and an operation which would not have been undertaken *but for the use,* maintenance, and ownership of the truck. In a trial it would have been competent under the complaint for plaintiff therein to prove negligence with respect thereto. The various things done resulting in the accident were in the course thereof; negligence therein causing *injury* was compensable under the policy." (Emphasis supplied.)

In Ehlers v. Gold et al., 169 Wis. 494, 173 N.W. 325, the fact situation is very similar to the case at bar. John Ehlers was run over by a car operated by the defendant Gold and received injuries resulting in death. At the time of the accident, Gold owned and operated a Ford car which was licensed as a common carrier over routes in the city of Milwaukee and the liability company had given an indemnity bond as required by law, conditioned that it would "pay all damages" not exceeding a certain amount "to any one person" "for any one accident that may be recovered against the operator of the vehicle" by reason of the negligent use or operation thereof, "while said motor vehicle is being operated in the service of a common carrier" as defined by the laws of Wisconsin. At dusk on the evening of October 12, 1916, the defendant Gold was driving his automobile on a street in Milwaukee. At the time of the accident, he was not carrying passengers on his route, having quit for the day, and was driving his automobile to a repair shop to have some necessary repairs made on the machine. The insurance company claimed it was not liable for the reason the machine was not being operated "in the service of a common carrier" at the time of the accident. In passing upon this contention, the court said:

"We are well satisfied that such a construction of the bond would be entirely too narrow. Gold was not going on a private errand, nor operating his machine for any private purpose at the time, but was taking it to a repair shop to have it repaired. Reason and good sense seem to us to require the holding that such a machine is being operated 'in the service of a common carrier,' not merely while it is carrying passengers on its route, but while it is running to a repair shop to receive the repairs necessary to enable it to continue its service as a common carrier."

■ No difference in principle is apparent in these facts and the facts shown in the case at bar. The truck involved herein had been taken to the Pioneer Equipment Company to have the valve on the tank repaired, which was necessary to enable the tank to continue in service on the route. An emergency was being taken care of in the ordinary way. Counsel for the plaintiff contends that under the agreed statement of facts, "said explosion was the result of the heat applied by the electric welding torch upon the outlet valve or area surrounding it," which controls the situation here. But he fails to take into consideration the remainder of the sentence, which reads: "Which caused gas fumes or vapors within the semitrailer to explode." Manifestly if the "gas fumes or vapors" had been properly removed from "within the semitrailer" there would have been no explosion when the torch was applied.

All of the authorities cited by counsel for the plaintiff in support of its contentions have been examined, but in the judgment of the court they are easily distinguishable and do not apply to the facts in

the case at bar. The court therefore concludes that the plaintiff is liable under its insurance policy on account of the death of Don Bacon, deceased, under the facts as stipulated by the parties.

A form of judgment declaring the rights of the parties in compliance with this opinion may be submitted within ten days from this date.