COURT OF APPEALS
DECISION
DATED AND FILED

December 17, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2458**

STATE OF WISCONSIN

Cir. Ct. No. 2024CV468

IN COURT OF APPEALS
DISTRICT II

KEITH L. NAEVE FAMILY TRUST,

    PLAINTIFF-APPELLANT,

  V.

SPRING CREEK CONDOMINIUM HOMES ASSOCIATION, INC.,
JANE STEKER, ERIC ANDERSON, NATALIE CYCENAS, ANN PAVILONIS,
TERRI SCHMIDT AND DAVID TITUS,

    DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Affirmed.*

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Keith L. Naeve Family Trust (the Trust) appeals from an order denying its motion for summary judgment and granting summary judgment in favor of Spring Creek Condominium Homes Association, Inc. (Spring Creek). The Trust contends the circuit court erred in concluding that Spring Creek's Board of Directors (the Board) could authorize certain work on the exterior of Spring Creek's condominium buildings under the condominium's bylaws without a vote of the unit owners. For the following reasons, we affirm.

## BACKGROUND

¶2 Spring Creek is a condominium association formed under Wisconsin law that oversees and manages 25 condominium buildings in Racine, Wisconsin.[1] The Trust, for whom Keith Naeve serves as trustee, owns a condominium unit at Spring Creek. Spring Creek's property and affairs are administered by the Board.

¶3 Spring Creek experienced water intrusion in some of its condominium buildings which required some of the siding to be replaced over time. In the winter of 2013-14, for example, there were 22 reports of water leaks due to ice damming on the property. A roofing company informed the Board president that the lack of TYVEK house wrap beneath the siding on the buildings was contributing to the ongoing water intrusion problems. In 2016, Spring Creek commissioned a study that described the existing siding as "in fair overall

---

[1] The parties' briefs contain citations to the appendices filed with their briefs, but these citations do not include parallel citations to the record items in the appendices. We remind the parties that our rules require citations directly to the record items themselves; citations to pages in an appendix only are not sufficient. *See* WIS. STAT. RULE 809.19(1)(d)-(e), (3)(a)2. (2023-24); *Casey v. Smith*, 2013 WI App 24, ¶1 n.1, 346 Wis. 2d 111, 827 N.W.2d 917, *aff'd*, 2014 WI 20, 353 Wis. 2d 354, 846 N.W.2d 791.

All references to the Wisconsin Statutes are to the 2023-24 version.

condition" and as "exhibit[ing] loose pieces, finish deterioration, damage and previous partial replacements." The study recommended that Spring Creek "budget for the phased replacement of the gutters and downspouts beginning by 2021 and concluding by 2025 in conjunction with siding replacements."

¶4 In early 2023, the Board hired an engineering firm to assist in soliciting bids to replace the siding on the condominium buildings and perform other related work on the soffits, fascia, flashing, gutters, and downspouts. In May 2023, the Board entered into an agreement with a contractor to perform the work on three of Spring Creek's buildings at a cost of approximately $256,000. A contract proposal for work on a fourth building describes the work to be performed as including removal and replacement of the existing siding, installation of TYVEK house wrap "over entire siding area," and installation of new flashing. The proposal also includes, as additional optional work, the installation of new gutters and downspouts, removal and replacement of soffit and fascia trim, and replacement of vinyl shutters. (Although the proposal lists this work as optional, the parties refer to the work on the gutters, soffit, and fascia as part of the project that has already been performed on some of the buildings.) Spring Creek admitted in its Answer that additional work on other buildings is planned for future years, "resulting in a multimillion dollar total Project cost."

¶5 The Board approved the project without a vote of the condominium owners pursuant to Article V, Section 11(b) of the condominium's bylaws, which states as follows:

> All maintenance, repairs and replacements to the common and limited common elements (unless necessitated by the negligence, misuse or misconduct of a unit owner, in which case the expense shall be charged to the unit owner) shall be made by the Board of Directors and be charged to all the unit owners as a common expense.

3

Naeve learned about the project and asked that it be put to a vote of the unit owners. He argued that a vote was necessary under Article V, Section 13 of the bylaws, which provides in part as follows:

> Whenever in the judgment of the Board of Directors the common and limited common elements require additions, alterations or improvements costing in excess of $10,000 and the making of the additions, alterations or improvements have been approved by a majority of unit owners, the Board of Directors shall proceed with the additions, alterations or improvements and shall assess all unit owners for the cost as a common expense.

The Board declined Naeve's request for an owner vote.

¶6      The Trust filed a Complaint in April 2024 against Spring Creek and the members of the Board alleging that the Board violated the bylaws by not obtaining the approval of the unit owners before undertaking the project and seeking an injunction stopping the project until a vote was held. Spring Creek filed its Answer and moved to dismiss the Complaint on the ground that the Board had exclusive authority under WIS. STAT. § 703.15 to interpret the bylaws and to decide that the project fell within Section 11 rather than Section 13. Spring Creek styled its motion as a motion to dismiss, but it submitted two affidavits in support of the motion. The Trust also filed a motion for summary judgment.

¶7      The circuit court did not exclude the affidavits from its consideration of Spring Creek's motion, but instead treated the motion as one for summary judgment. *See* WIS. STAT. § 802.06(2)(b) (if on a motion to dismiss "matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [WIS. STAT. §] 802.08"). The court granted Spring Creek's motion and denied the Trust's motion, concluding that the Board's "designation of this project" as

4

involving "maintenance and repair" under Section 11 of the bylaws was "legally permissible." The court also concluded that the project was not an "addition" or "alteration" under Section 13 but instead was "undertaken for the limited purpose of maintaining the existing structural components" and thus could be approved by the Board under Section 11 without a vote of the unit owners.

## DISCUSSION

¶8 We review a grant of summary judgment de novo, using the same methodology as the circuit court. *Emjay Inv. Co. v. Village of Germantown*, 2011 WI 31, ¶24, 333 Wis. 2d 252, 797 N.W.2d 844. Summary judgment will be granted when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *see also LaCount v. General Cas. Co.*, 2006 WI 14, ¶20, 288 Wis. 2d 358, 709 N.W.2d 418. We also interpret condominium documents de novo as they present issues of law. *Apple Valley Gardens Ass'n v. MacHutta*, 2009 WI 28, ¶12, 316 Wis. 2d 85, 763 N.W.2d 126.

¶9 WISCONSIN STAT. § 703.15(1) empowers the board of directors of a condominium association to make "all policy and operational decisions of the association, including interpretation of the condominium instruments, bylaws, rules, and other documents relating to the condominium or the association" unless those decisions are reserved to others by WIS. STAT. ch. 703, the declaration, or the bylaws. But the statute "does not affect the deference accorded to, or the standard of review of, an action of the board of directors by a court." Sec. 703.15(1).

¶10 Here, the Board authorized work on the siding project without an owner vote based on its conclusion that the work fell within Section 11, rather

5

than Section 13, of Article V of Spring Creek's bylaws. On appeal, the Trust contends that decision "is contrary to the intent and language of the bylaws." It argues that because Section 13 requires an owner vote on any "additions, alterations or improvements costing in excess of $10,000," the bylaws reflect "a clear intent … that expensive projects require unit owner approval, since [they] would result in a massive increase in their assessments." The Trust contrasts such projects with "maintenance projects" governed by Section 11, which "typically cost far less and are undertaken to fix something that is broken or for regular upkeep." The Trust argues further that the circuit court's deference to the Board's characterization of the project as maintenance "is incongruent" with recent United States Supreme Court and Wisconsin Supreme Court cases rejecting judicial deference to administrative agencies' interpretations of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21.

¶11 We are not persuaded by the Trust's arguments. Spring Creek's bylaws are contractual in nature. *See King v. Chism*, 632 S.E.2d 463, 465 (Ga. Ct. App. 2006). We thus construe them using contract interpretation principles. Of particular importance here, we construe the language in Sections 11 and 13 of the bylaws according to its plain and ordinary meaning and in line with what a reasonable person would understand those provisions to mean. *See Buchholz v. Schmidt*, 2024 WI App 47, ¶23, 413 Wis. 2d 308, 11 N.W.3d 212. To ascertain plain and ordinary meaning, we may look to dictionary definitions of the relevant terms. *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2014 WI App 87, ¶14, 356 Wis. 2d 249, 853 N.W.2d 618, *aff'd*, 2015 WI 65, 363 Wis. 2d 699, 866 N.W.2d 679.

6

¶12    As framed by the parties' arguments, the core issue on appeal is whether the siding and other work approved by the Board constitute "additions, alterations or improvements" under Section 13 or "maintenance, repairs and replacements" under Section 11.  The parties cite decisions from our supreme court which have construed some of these terms with reference to dictionary definitions.  Specifically, an "improvement" has been defined as "[a] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." ***Kallas Millwork Corp. v. Square D Co.***, 66 Wis. 2d 382, 386, 225 N.W.2d 454 (1975) (quoting *Improvement*, Webster's Third Int'l Dictionary (1965)).  In contrast, "maintenance" has been defined as "[t]he work of keeping something in proper condition; upkeep." ***Hocking v. City of Dodgeville***, 2010 WI 59, ¶48, 326 Wis. 2d 155, 785 N.W.2d 398 (quoting *Maintenance*, American Heritage Dictionary 1084 (3d ed. 1992); alteration in original).[2]

¶13    We agree with the circuit court that the work approved by the Board falls within Section 13 of the bylaws because it constitutes "maintenance, repairs and replacements," and thus did not require a vote of the unit owners.  The removal and replacement of various portions of the building exteriors—siding, soffit, fascia, flashing, and gutters—falls within Section 13 because those portions of the work replaced the older components with new ones.  They also, along with the installation of house wrap beneath the new siding, constitute "maintenance"

---

[2] The Trust also cites provisions in the Internal Revenue Code and several Internal Revenue Service publications that define and contrast "improvements" to real property from "maintenance" and "repairs."  The Trust does not explain why these sources are relevant to the interpretation of Sections 11 and 13 of the bylaws, and we do not rely on them in our analysis.

because the new components are intended to keep the exterior of the buildings in proper condition and prevent continued ice damming and water intrusion.

¶14   The exterior work is not an "improvement" under Section 13 because the removal and replacement of the exterior components, and the installation of house wrap, are more akin to repairs that are intended to preserve the buildings' value than additions to the buildings intended to increase their value.   That the total projected cost is substantially in excess of the $10,000 threshold in Section 13 does not, given the nature of the work, require approval of a majority of the unit owners.

*By the Court.*—Order affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.