Gelbert MARTINEZ and Hortenci Martinez, Plaintiffs,

EMPLOYEE BENEFIT PLAN OF MAPLE LEAF FARMS, Involuntary-Plaintiff,

v.

JEFFERSON INSURANCE, Defendant-Respondent,

Barry W. ARRIES, Defendant,

CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 98–2589. Submitted on briefs December 22, 1998.—Decided March 3, 1999.*

(Also reported in 593 N.W.2d 475.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David M. Victor, Law Offices of Mark H. Miller* of Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Wendy G. Gunderson* of *Bren, Przybeck & Stotler* of Milwaukee and of counsel, *Ira S. Lipsius, Esq.,* pro hac vice and *Jeffrey S. Rogoff, Esq.* of *Schindel, Farman & Lipsius LLP* of New York.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J.   Continental Casualty Company appeals from a judgment in favor of Jefferson Insurance, which determined that an insurance policy issued by Continental provides primary liability coverage for a motor vehicle accident in which Barry W. Arries (Barry) was involved. At the time of the accident, Barry was operating a truck which was owned by Arries Trucking, Inc., and leased to Three T's Truck-

ing, d/b/a Jung Brothers Trucking (Jung). Continental issued a liability policy to Jung, while Jefferson provided liability coverage to Arries Trucking. Arguing that the trial court incorrectly determined Jung vicariously liable for Barry's negligence, Continental asks us to reverse the court's conclusion that Barry was acting in the course and scope of his employment while driving the truck. We disagree. Accordingly, we affirm the judgment.

On July 22, 1993, Barry was involved in a traffic accident with a car occupied by Gelbert and Hortenci Martinez. At that time, Barry was driving his employer's truck. Jung, the employer, had leased this truck from Arries Trucking. Barry would use Jung's truck for his driving assignments. At the end of the day, Barry would drive the truck home and park it at his house.

On the morning of Barry's accident, he telephoned Tom Jung (Tom), one of Jung's owners, to find out if he needed Barry to carry loads of soil that day. Due to rain overnight, Tom informed him that the scheduled soil pick-ups for that day had been canceled, but that Barry should stop by later that day to see if any work had become available and to drop off some paperwork. When the accident occurred later that day, Barry testified that he was on his way to Jung's shop to drop off some paperwork and find out if Jung had any driving assignments.

After the accident, the Martinezes commenced this lawsuit against Barry and Jefferson Insurance, the liability insurance provider for Arries Trucking. Jefferson impleaded Continental to the lawsuit because both insurance policies provided coverage for Barry at the time of the accident. Jefferson alleged that Continental was the "primary coverage" insurer. Jefferson settled

the Martinezes' claims for $75,000 and continued its action against Continental to recover this amount.

Jefferson and Continental submitted cross-motions for summary judgment to the trial court. After a hearing on the motions, the court originally granted the motion for summary judgment in favor of Continental. Jefferson appealed.

In an unpublished per curiam opinion, we reversed the summary judgment grant in *Martinez v. Jefferson Insurance*, No. 96–2565, unpublished slip op. (Wis. Ct. App. June 4, 1997) (per curiam). In the prior appeal, we determined that the "Trucker's Coverage" sections of the policies issued by Continental and Jefferson were identical and governed liability in this case. *See id.* at 2, 5. We held that the policies defined which insurer was excess and which was primary, setting forth policy language indicating that primary coverage was provided for a vehicle while hired or borrowed by the insured and used exclusively in the insured's business as a trucker. *See id.* We determined that under both of the policies, the truck leased to Jung and operated by Barry was a covered vehicle. *See id.* at 5. To determine which insurer provided primary coverage, we remanded the matter for a determination of whether the truck was being operated for Jung's business at the time of the accident. *See id.*

On remand following the original appeal, a bench trial was held. At its conclusion, the trial court found that at the time of the accident Barry was engaged in activities which were, at least in part, for the benefit of Jung and that Continental's policy therefore provided primary coverage. Now, Continental appeals.

Continental contends that Barry was not an employee of Jung and, even if he were, he was not acting in the course and scope of his employment at the

time of the accident. Continental contends that Jung therefore cannot be vicariously liable for the accident. Alternatively, it contends that public policy is violated by holding Jung vicariously liable under these circumstances.

Continental's reliance on the law regarding vicarious liability is misplaced. This case is governed by the language of the insurance policies, not by the law related to independent contractors and vicarious liability. As determined in our prior decision, the issue is whether Barry was operating the truck for Jung's business at the time of the accident. This issue required the trial court to reach a factual conclusion. We will not set aside a trial court's finding of fact unless this finding is clearly erroneous. *See* § 805.17(2), STATS. Because we determine that the trial court's findings on this matter are not clearly erroneous, we affirm. *See id.*

We will briefly review the facts presented to the trial court to make the determination in question. The record indicates that on the day before the accident, Barry drove the truck on an assignment for Jung. On the morning of the accident, Barry called Tom Jung, an owner and dispatcher for Jung, to determine whether there was any work available carrying loads that day. Barry testified that Tom told him that there was no work at the moment but it might become available later in the day. Barry testified that Tom also told him to come into the Jung offices to go over some paperwork, although he was not given any particular time to do so or ordered to come in. He testified that he was driving to the Jung office to drop off the paperwork and see if any assignments were available when the accident happened.

Tom did not dispute Barry's testimony at trial and acknowledged that while he did not specifically recall

telling Barry to bring in his paperwork that morning, he could have. He further explained that when he and Barry discussed bringing in the paperwork, they were referring to tickets which drivers working on Jung's behalf are required to present to Jung's customers for their signature. Jung requires drivers to return the tickets to its office and then uses the signed tickets to bill its customers. Jung prefers to have the tickets submitted by the end of the week but requires that they be in by the end of the month. Tom testified that submission of the tickets to Jung is necessary for it to bill its customers and have an adequate cash flow to pay its drivers.

Because Barry was on his way to Jung's office to turn in tickets so that Jung could bill its customers, as well as to ascertain whether an assignment was available, the trial court properly determined that the truck was being operated for, and used in, Jung's business at the time of the accident. It is immaterial that Jung may not have ordered Barry to bring in the tickets on this particular day, since the relaxed practice of Jung was merely part of its operation—requiring drivers to submit the tickets at the end of the week or month, but nevertheless requiring that they be brought in at some point so that billing could be completed.

In determining that the truck was being operated for Jung's business at the time of the accident, the trial court properly relied upon *Lime City Mutual Insurance Ass'n v. Mullins*, 615 N.E.2d 305 (Ohio Ct. App. 1992). The *Lime City* court was presented with a fact situation similar to the present case. There, a truck driver was involved in a collision on his way to the trucking company's terminal. *See id.* at 306. Before leaving for the terminal, the driver knew that no loads were presently available but that he was next in line for any future

loads. *See id.* The court was asked to determine if one insurance company's liability policy covered the collision, thereby excluding the other insurance carrier. *See id.* at 306–07.

■

Upon analyzing both insurance policies, the *Lime City* court decided that the key policy language was the phrase "used in the business of." *See id.* at 307. As a result, whether the insurance company's policy covered the collision turned on if the driver was using the truck "in the business of" the trucking company at the time of the collision. *See id.* Additionally, the court noted that the phrase "used in the business of" is a common phrase in insurance contracts and has been defined by numerous courts to mean " 'used to further the commercial interests of the lessee.' " *See id.* at 307–08 (quoting *Hartford Ins. Co. v. Occidental Fire & Cas. Co.*, 908 F.2d 235, 239 (7th Cir. 1990)). Applying that definition, the court held that a driver operating a truck leased to a trucking company was operating the vehicle in the business of the trucking company when he was driving from his home to the trucking company's terminal with the knowledge that he was next in line to be assigned a load. *See Lime City*, 615 N.E.2d at 309–10. The court held that it was immaterial that the driver was not ordered to come to the terminal, since doing so was to the benefit of the trucking company. *See id.* at 310.

In the present case, the trial court properly applied the same reasoning as *Lime City*. The court determined that Barry was operating the truck for the benefit of Jung by bringing his tickets to the Jung office and that he was therefore using the truck in Jung's business for purposes of primary insurance coverage. We agree.

550

Because this case involves the application of insurance policy provisions rather than application of the law of vicarious liability, we reject Continental's argument that the trial court has extended vicarious liability beyond public policy limits. Liability was created by the policy itself, and if Continental did not wish to extend coverage under these circumstances its remedy was to refuse to issue the policy or to include different coverage language.

While we affirm the trial court's judgment, we reject Jefferson's argument that this appeal was frivolous within the meaning of RULE 809.25(3)(c)2, STATS. Unlike the situation in *Lessor v. Wangelin*, 221 Wis. 2d 659, 669, 586 N.W.2d 1, 5 (Ct. App. 1998), Continental is not asking this court to usurp the trial court's role and reweigh the evidence, but is instead arguing that the facts as found by the trial court do not provide a basis for imposing liability. Because there is at least an arguable basis for the contention that the insurance policy language must be construed with reference to the principles and public policy underlying vicarious liability, we do not find the appeal to be frivolous. *See* RULE 809.25(3)(c)2.

*By the Court.*—Judgment affirmed.