In the Matter of Disciplinary Proceedings Against
Leo Barron Hicks, Attorney at Law:

Office of Lawyer Regulation, Complainant,

v.

Leo Barron Hicks, Respondent.

Supreme Court

*No. 02–2197–D.—Decided February 27, 2004.*

2004 WI 12

(Also reported in 675 N.W.2d 445.)

¶ 1. PER CURIAM. We review the recommendation of the referee, Amy Gentz, that Attorney Leo Barron Hicks receive a public reprimand for professional misconduct consisting of failing to hold a client's property in trust, separate from the lawyer's own property; failing to take remedial action when a lawyer knows of misconduct by another lawyer in the firm; and failing to treat property in which both the lawyer and another person claim interests as trust property until there has been an accounting and severance of their interests. The referee also recommends that Attorney Hicks be required to pay the costs of the proceeding.

¶ 2. We determine that a public reprimand is appropriate discipline for Attorney Hicks' misconduct. We also order him to pay the costs of this proceeding.

¶ 3. Attorney Hicks was admitted to practice law in Wisconsin in 1985. His license has been under suspension since October 31, 2001, for failure to pay state bar dues and since June 3, 2002, for failure to comply with mandatory Continuing Legal Education (CLE) reporting requirements. Attorney Hicks currently resides in Texas.

¶ 4. Attorney Hicks formerly practiced law in Madison in association with Attorney Lauren Brown-Perry. In 1997 a client was referred to the law firm by a legal services plan. The client's case involved a prospective buyer who had backed out of an agreement to purchase real estate from the client shortly before the

closing. Attorney Brown-Perry accepted the client's case and did most, if not all, of the client's legal work.

¶ 5.   The client made advance payments of $1500 toward the legal fees and signed a fee agreement that provided the retainer would be applied toward hourly fees and expenses but would not be placed in a trust account. The agreement did not state an hourly rate but the legal services plan required the fee to be set at a maximum of $70 per hour. The agreement also provided the client would receive monthly billing statements.

¶ 6.   The case was settled in July of 1998 with the prospective buyer and the realtor each paying the client $2000. The client was not provided with any monthly billing statements as required by the fee agreement. The client said she understood that her $1500 retainer fee covered all or nearly all of her fees, and she expected to receive a check for the full amount of the $4000 settlement.

¶ 7.   At the time the two settlement checks were received, the law firm did not have a client trust account so Attorney Brown-Perry deposited the two settlement checks into the law firm's business checking account. Prior to the date the first check was deposited the account had a balance of $2439.10. In the next week 14 checks cleared the account, 10 signed by Attorney Hicks and 4 signed by Attorney Brown-Perry. The checks signed by Attorney Hicks included a late payment to the Internal Revenue Service, two checks to Attorney Brown-Perry, and three checks to Attorney Hicks personally. Five days after the client's second settlement check was deposited, the balance in the account was only $3520.21, which was less than the $4000 in settlement proceeds allegedly being held for the client. In the next two weeks numerous other checks were written on the account, several deposits

were received, and the account became overdrawn. No distribution had yet been made to the client.

¶ 8.  Attorney Hicks said he was advised by Attorney Brown-Perry that she would deposit the client's settlement funds into an account with the law firm. Attorney Hicks said it was his understanding that Attorney Brown-Perry intended to promptly satisfy the client's claim, but no payment was made to the client for four months after her settlement proceeds were received. In late November 1998 Attorney Hicks signed a check payable to the client in the amount of $2028. Attorney Brown-Perry mailed the check to the client indicating the settlement balance was enclosed but she provided no explanation for the deduction of $1982 from the $4000 settlement.

¶ 9.  Although Attorney Brown-Perry's cover letter to the client said a billing statement was enclosed, no billing statement was in fact enclosed, nor had one been prepared. The client did not cash the check. Instead she made frequent phone calls to the law firm asking for an explanation why the check was written for less than the $4000 settlement. Attorney Hicks personally took some of the phone calls from the client inquiring about the balance of her settlement proceeds. Attorney Hicks said he advised Attorney Brown-Perry of the calls and requested that she take appropriate action.

¶ 10.  In February 1999 Attorney Hicks opened a money-market savings account entitled "Hicks & Brown-Perry Law Office, [client] Account" and deposited fee payments totaling $2587 into the account. No checks were ever written on the account, and the client never received an accounting or billing statement.

¶ 11.  In April 1999, while the check previously sent to the client was still outstanding, the law firm

closed the business account on which the check had been written and transferred the remaining funds into a new account. A new check was not provided to the client so the check she was holding would no longer have been honored had it been presented for payment.

¶ 12. On April 14, 1999, Attorneys Hicks and Brown-Perry signed a new account authorization for removing the client's name from the account Attorney Hicks had previously opened for her and retitled the account as the law firm's IOLTA Trust Account. Attorneys Hicks and Brown-Perry reported this account as their firm's trust account to the state bar and the Office of Lawyer Regulation (OLR).

¶ 13. The client hired a lawyer to file a small claims action against Attorney Brown-Perry to recover her settlement proceeds. The small claims case was concluded in December of 1999, more than 16 months after the law firm had received the settlement funds, with an agreement that Attorney Brown-Perry would pay the client the full amount of the settlement plus an additional $1000, for a total payment of $5000. Part of the settlement was paid out of the firm's IOLTA Trust Account. Attorney Hicks' association with Attorney Brown-Perry ended soon thereafter.

¶ 14. The OLR filed a disciplinary complaint against Attorney Brown-Perry arising out of her mishandling of the client's funds. Her license was suspended as a result of her misconduct. *In re Disciplinary Proceedings Against Brown-Perry,* 2003 WI 151, 267 Wis. 2d 184, 672 N.W.2d 287.

¶ 15. On August 19, 2002, the OLR filed a complaint alleging that Attorney Hicks violated SCR

20:1.15(a),[1] SCR 20:5.1(c)(2),[2] and SCR 20:1.15(d).[3] Attorney Hicks filed an answer, affirmative defenses,

[1] SCR 20:1.15(a) provides:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[2] SCR 20:5.1(c)(2) provides:

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

[3] SCR 20:1.15(d) provides:

and counterclaim in which he asserted that he lacked knowledge of when Attorney Brown-Perry deposited the checks and that he did not become personally aware, nor should he have become aware, that his partner had commingled the client's funds until the OLR's inquiry in August of 2000.

¶ 16. In September of 2003 the parties entered into a stipulation whereby Attorney Hicks withdrew his answer to the OLR's complaint and pled no contest to each and every allegation of misconduct contained in the complaint. The stipulation further provided that the complaint could be relied upon by the referee as the basis for establishing the factual record in the matter.

¶ 17. The referee issued her report and recommendation on October 28, 2003. She found that all of the factual allegations in the OLR's complaint had been proven and concluded that Attorney Hicks had violated the three supreme court rules as alleged in the complaint. She recommended that this court impose a public reprimand on Attorney Hicks, and she further recommended that the costs of the proceeding be assessed against him.

¶ 18. Attorney Hicks filed an objection to the OLR's statement of costs, asserting that the OLR is estopped from requesting an assessment of costs because in early 2002, before the complaint was filed, the OLR offered Attorney Hicks the opportunity to consent to a public reprimand and informed him that if he so

(d) When, in the representation, a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall continue to be treated as trust property until the dispute is resolved.

consented no costs would be sought. The OLR responds that although it did offer Attorney Hicks the opportunity to resolve the matter without costs prior to the filing of the complaint, it was unreasonable for Attorney Hicks to assume that no costs would be assessed after the disciplinary complaint was filed and after he litigated the case nearly up to the date of the scheduled hearing before the referee.

■■

¶ 19. We adopt the referee's findings of fact and conclusions of law. Attorney Hicks' misconduct with respect to the handling of the client's funds and the mishandling of his firm's trust account are serious failings. As discipline for the professional misconduct we impose a public reprimand. We also order Attorney Hicks to pay the costs of this proceeding, as recommended by the referee. Attorney Hicks chose to litigate the matter, and the OLR incurred costs which are appropriately assessed against Attorney Hicks.

¶ 20. IT IS ORDERED that Attorney Leo Barron Hicks be publicly reprimanded for his professional misconduct.

¶ 21. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Leo Barron Hicks shall pay to the Office of Lawyer Regulation the costs of this proceeding in the amount of $1644.84. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Attorney Leo Barron Hicks to practice law in Wisconsin shall be suspended until further order of the court.

¶ 22. SHIRLEY S. ABRAHAMSON, C.J., did not participate.