# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP667 |
| COMPLETE TITLE: | Brian Casey, |
| |        Plaintiff, |
| |    v. |
| | Ronald Smith, John Zeverino, Taylor Truck Line, Inc., |
| | Allstate Property and Casualty Insurance Company, Austin |
| | Mutual Insurance Company and Health Partners, |
| |        Defendants, |
| | Acceptance Casualty Insurance Company, |
| |        Defendant-Appellant-Petitioner, |
| | Great West Casualty Company, |
| |        Defendant-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
346 Wis. 2d 111, 827 N.W.2d 917
(Ct. App. - Published)
PDC No: 2013 WI App 24

| | |
|---|---|
| OPINION FILED: | April 18, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 14, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dunn |
|   JUDGE: | Rod W. Smeltzer |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the defendant-appellant-petitioner, there were briefs by *Charles J. Noel* and *Charles J. Noel & Associates, P.A.*, Minneapolis, and oral argument by *Charles J. Noel.*


    For the defendant-respondent, the cause was argued by *Tamara L. Novotny* with whom on the brief was *Michael W. McNee*, and *Cousineau McGuire Chartered*, Minneapolis.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2012AP667
(L.C. No. 2010CF295)

STATE OF WISCONSIN      :      IN SUPREME COURT

Brian Casey,

         Plaintiff,

     v.

Ronald Smith, John Zeverino, Taylor Truck Line, Inc., Allstate Property and Casualty Insurance Company, Austin Mutual Insurance Company and Health Partners,

         Defendants,

Acceptance Casualty Insurance Company,

         Defendant-Appellant-Petitioner,

Great West Casualty Company,

         Defendant-Respondent.

**FILED**

**APR 18, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J.    Defendant Acceptance Casualty Insurance Company (Acceptance) seeks review of a published decision of the court of appeals affirming the circuit court's grant of summary judgment in favor of Great West Casualty

Company (Great West).[1]  Both Acceptance and Great West issued liability insurance policies for a semi-tractor that was owned by John Zeverino and leased to Taylor Truck Line.  Acceptance provided a non-trucking use policy and Great West provided a commercial truckers' policy.

¶2  Both parties agree that the accident is covered by insurance, but disagree as to which of the two policies provides the coverage.  Each insurer filed a summary judgment motion asserting the other was responsible for coverage.  Both the circuit court and the court of appeals concluded that of the two policies, the Acceptance policy provided coverage for the multi-vehicle accident.

¶3  Acceptance asserts that its policy provides no coverage because it contains two exclusions which preclude coverage.  It primarily focuses on 14(b) that excludes coverage when a semi-tractor is being used "in the business of" a lessee.  Acceptance contends that because the accident occurred while the semi-tractor's driver, John Zeverino, was on his way to a maintenance facility for repairs to the grille and oil filler tube, the semi-tractor was being used in the business of Taylor Truck Line at the time of the accident.

¶4  Alternatively, it advances that 14(a) excludes coverage when a semi-tractor is "en route to" a "business purpose" and that obtaining maintenance is a business purpose.

---

[1] Casey v. Smith, 2013 WI App 24, 346 Wis. 2d 111, 827 N.W.2d 917 (affirming judgment of the circuit court for Dunn County, Rod W. Smeltzer, Judge).

2

Acceptance argues that because obtaining repairs constitutes a business purpose, there is no coverage under its non-trucking use policy.

¶5 We determine that neither of the exclusions in Acceptance's policy precludes coverage. The facts of record do not support the application of exclusion 14(b). Zeverino was not using the semi-tractor "in the business of" Taylor Truck Line because the repairs here did not further Taylor's commercial interests. There is nothing in the record that shows the repairs were required by the lease. Additionally, the repairs were not done pursuant to orders from Taylor Truck Line, and they were not necessary for the semi-tractor to continue its service.

¶6 Further, Acceptance's argument that coverage is excluded because Zeverino was en route to the business purpose of obtaining maintenance reflects an overly expansive interpretation of the text of exclusion 14(a). Like the court of appeals, we are concerned that its interpretation may render coverage illusory. Instead, in examining the text of exclusion 14(a) we determine that it refers to maintenance necessary to allow the semi-tractor to carry property. It is undisputed that the semi-tractor could and did carry loads without the repairs to the grille and oil filler tube.

¶7 Because the exclusions in Acceptance's policy do not apply, we conclude that its non-trucking use policy provides coverage for the accident. Accordingly, we affirm the court of appeals.

I.

¶8 The parties repeatedly asserted that the facts in this case are not in dispute. Zeverino owned a 2003 Freightliner semi-tractor which he leased to Taylor Truck Line, Inc. Under the terms of the lease Zeverino agreed to provide a driver and use his semi-tractor exclusively for Taylor Truck Line. The lease also provided that Zeverino would "bear all expenses to the operation to the equipment, including . . . [r]epairs and maintenance" and "[m]aintain[] the equipment in a state of repair required by all applicable regulations."[2] The lease further required Taylor Truck Line to obtain insurance as required by federal law[3] and Zeverino to obtain "bobtail

---

[2] Section 23 of the lease states:

The contractor shall have the responsibility to carrier of satisfying various regulatory requirements, and safety requirements of carrier and/or insurance company, by:

  A) Maintaining the equipment in the state of repair required by all applicable regulations.
  B)

[3] Section 17(A) of the lease provides:

LIABILITY-PROPERTY DAMAGE INSURANCE. During the existence of this agreement, carrier will provide and maintain insurance coverage for the protection of the public from damage to persons and property, pursuant to its statutory obligations under 49 U.S.C. 10927.

liability insurance"[4] to cover the semi-tractor "when not used in performance under this agreement."

¶9 Pursuant to the lease, Zeverino obtained an insurance policy for non-trucking use coverage from Acceptance. An exclusion in section 14(a) of the policy states that it does not cover the semi-tractor "[w]hile being operated, maintained or used to carry property in any business or en route to or from such business purpose." Section 14(b) of the policy sets forth another exclusion that states that it does not cover the semi-tractor "[w]hile used in the business of anyone to whom the 'auto' is rented."

¶10 Taylor Truck Line obtained a commercial truckers' insurance policy from Great West. The policy provides coverage for:

> [t]he owner or anyone else from whom you lease, for more than 30 consecutive days, a covered "auto" with a driver that is not a "trailer" while the covered "auto":
>
> (1) Is being used exclusively in your business as a "trucker."

The policy defines a "trucker" as "any person or organization engaged in the business of transporting property by 'auto' for hire."

---

[4] "A bobtail is the popular term for a tractor (cab) without an attached trailer. Since a trucker who is 'bobtailing' is generally not using the vehicle for trucking purposes, non-trucking-use insurance is often called bobtail insurance." Royal Indem. Co. v. Providence Wash. Ins. Co., 707 N.E.2d 425, 426 n.1 (N.Y. 1998).

¶11 In January 2009, Zeverino took the semi-tractor to FABCO, a truck maintenance facility in Eau Claire, to have its engine control module recalibrated. While the semi-tractor was there, FABCO inadvertently damaged its grille. FABCO ordered a new one and called Zeverino when it arrived. Instead of making an appointment to replace the grille, Zeverino was to return to FABCO to have the grille replaced whenever it was convenient for him. In addition, Zeverino had previously ordered a new oil filler tube which he had intended to install himself. FABCO offered to install the new tube at the same time it replaced the grille.

¶12 The damaged grille did not put the truck out of service or prevent Zeverino from completing or accepting new loads to haul. Zeverino indicated that he was on duty several hours from February 20 through February 25, 2009. He testified that having the grille replaced "was not a routine maintenance, but it was a repair that they had broken, they had to replace." He agreed that he needed to have the repair work done "to have [the] tractor the way [he] needed it to . . . operate as an owner, operator for Taylor Truck Line."

¶13 On February 27, 2009, approximately a month after the grille was broken, Zeverino left his home in Prescott and headed to Eau Claire to have the grille replaced. Zeverino was off-duty at the time. Taylor Truck Line did not know he was going to Eau Claire that day and he was not under any order or instruction from Taylor Truck Line to do so. Zeverino stated in his deposition that he did not consider himself to be "in the

6

business of Taylor Truck Line at the time." Although he indicated that the grille was "starting to fall apart and fall off on the highway," Zeverino also testified that he could have taken a load that day without service to his grille or oil filler tube.

¶14 While en route to Eau Claire, Zeverino's tractor was involved in a multi-vehicle accident that included vehicles driven by Ronald Smith and Brian Casey. Zeverino wrote in his Driver's Daily Log that he was "driving" at the time of the accident and "on duty" while at the scene of the accident. While there, Zeverino filled out an accident report which indicated that there was nothing wrong with the semi-tractor prior to the accident. A Wisconsin state trooper who arrived at the scene conducted a Level 1 DOT inspection of Zeverino's semi-tractor, apparently the most comprehensive type of post-accident inspection. The trooper also completed a "Driver/Vehicle Examination Report" and noted that no violations were discovered during the inspection. Thereafter, the trooper permitted Zeverino to continue on to Eau Claire, where FABCO replaced the grille and oil filler tube. Together the repairs took approximately an hour.

¶15 Casey filed a complaint on June 29, 2010, seeking recovery for injuries he sustained in the accident. He included Zeverino, Taylor Truck Line, Acceptance, and Great West as named defendants.

¶16 Both insurance companies filed cross motions for summary judgment on April 6, 2011. Acceptance pointed to two

relevant exclusions in its non-trucking policy, section 14(a) and section 14(b). It asserted that at the time of the accident the semi-tractor was being used "in the business of" Taylor Truck Line. Additionally, it argued that because the accident occurred while Zeverino was "en route" to have maintenance done on the semi-tractor, it was being used for a "business purpose" of the lessee. Acceptance contended that the exclusions precluded coverage.

¶17 Great West asserted that Zeverino was not using the semi-tractor in the business of the lessee because the repairs were not needed to make the semi-tractor safe or available for Taylor Truck Line's use, and Taylor Truck Line had not directed Zeverino to have the repairs done. Great West argued that it was not responsible for providing coverage for the accident because its policy afforded coverage only while the semi-tractor was "being used exclusively in [Taylor's] business."

¶18 The circuit court issued an order denying both motions. It determined that there was a triable issue of fact as to whether Zeverino was performing in furtherance of the business or commercial interests of Taylor Truck Line.

¶19 Upon a motion for reconsideration, together with supplemental memoranda of law and supplemental affidavits, the circuit court granted summary judgment in favor of Great West. It found that Zeverino was having non-essential repairs done on his own time. Accordingly, the circuit court determined that Zeverino was not involved in furthering the business of Taylor Truck Line at the time of the accident.

¶20 The court of appeals affirmed. <u>Casey v. Smith</u>, 2013 WI App 24, 346 Wis. 2d 111, 827 N.W.2d 917.  It noted the parties' agreement that one of their policies afforded coverage for the accident and that resolution of which policy applied depended on whether Zeverino was operating the semi-tractor "in the business of" Taylor Truck Line.  <u>Id.</u>, ¶10.

¶21 The court considered first the exclusion set forth in section 14(b) of Acceptance's policy.  Quoting the Seventh Circuit Court of Appeals, the court stated that a tractor is being operated "in the business of" the lessee when "the truck is being used to further the commercial interests of the lessee."  <u>Id.</u>, ¶17 (quoting <u>Hartford Ins. Co. v. Occidental Fire & Cas. Co.</u>, 908 F.2d 235, 237 n.5, 239 (7th Cir. 1990)).  The court noted Zeverino's testimony that the defects did not prevent him from hauling loads and his concession that the semi-tractor was never taken out of service.  <u>Id.</u>, ¶23. Consequently, the court determined that the repairs to the semi-tractor's grille and oil filler tube were not necessary for Zeverino to continue operating in Taylor Truck Line's business. <u>Id.</u>  Therefore, it concluded that "the repairs did not further Taylor's commercial interests and Zeverino was not acting 'in the business of' Taylor at the time of the accident."  <u>Id.</u>

¶22 Next, the court considered the exclusion set forth in section 14(a) of Acceptance's policy.  It recounted Acceptance's contention that the exception lists three activities that qualify as "business purposes:" (1) operation, (2) maintenance, and (3) being used to carry property in any business.  <u>Id.</u>, ¶31.

9

The court determined that such an interpretation "produces absurd results" as it would mean "the mere operation of the tractor, for any reason, would be a business purpose." Id., ¶32. Accordingly, the court rejected Acceptance's interpretation of section 14(a). It concluded that the business purposes referred to in section 14(a) were: (1) operation to carry property in any business, (2) maintenance to carry property in any business, and (3) use to carry property in any business. Id., ¶33.

## II.

¶23 In this case, we are called upon to review the circuit court's grant of summary judgment to Great West. We review grants of summary judgment independently of the determinations rendered by the circuit court and the court of appeals, but we apply the same methodology as the circuit court. Park Bank v. Westburg, 2013 WI 57, ¶36, 348 Wis. 2d 409, 832 N.W.2d 539. Summary judgment is appropriate where "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

¶24 Here, the parties agree that there are no material facts in dispute. At issue is the interpretation of Acceptance's and Great West's policies. The interpretation of an insurance policy is a question of law that we review independently of the decisions rendered by the circuit court and the court of appeals. Schinner v. Gundrum, 2013 WI 71, ¶35, 349 Wis. 2d 529, 833 N.W.2d 685.

10

¶25 This court has a well-established methodology for determining insurance coverage. First, we look to a policy's initial grant of coverage. _Wadzinski v. Auto-Owners Ins. Co._, 2012 WI 75, ¶14, 342 Wis. 2d 311, 818 N.W.2d 819. Second, if there is an initial grant of coverage, the court will examine whether any exclusions withdraw coverage from a claim. _Id._ Third, if an exclusion applies, the court will then consider whether there are any exceptions to the exclusion that reinstate coverage. _Id._

¶26 Our inquiry is also guided by the canons of construction applicable to insurance policies. "[W]e interpret policy language according to its plain and ordinary meaning as understood by a reasonable person in the position of the insured." _Hirschhorn v. Auto-Owners Ins. Co._, 2012 WI 20, ¶22, 338 Wis. 2d 761, 809 N.W.2d 529. Ambiguities in the policy language are construed against the insurer. _Marlowe v. IDS Prop. Cas. Ins. Co._, 2013 WI 29, ¶48, 346 Wis. 2d 450, 828 N.W.2d 812. Further, polices should be construed to avoid absurd or unreasonable results. _McPhee v. American Motorists Ins. Co._, 57 Wis. 2d 669, 679, 205 N.W.2d 152 (1973).

### III.

¶27 We turn first to Acceptance's policy. It is undisputed that Acceptance's non-trucking use policy makes an initial grant of coverage for the accident. Accordingly, we look to the policy exclusions to determine if any remove the accident from coverage.

11

¶28 Central to this inquiry is exclusion 14(b) of Acceptance's policy, which provides: "[t]his insurance does not apply to any of the following: . . . [a] covered 'auto' . . . [w]hile used in the business of anyone to whom the 'auto' is rented." The parties disagree about whether Zeverino was using the semi-tractor "in the business of" Taylor Truck Line at the time of the accident.

¶29 The Seventh Circuit has articulated how the phrase "in the business of" is to be interpreted in the context of a non-trucking use insurance policy. Hartford Ins. Co. v. Occidental Fire & Casualty Co., 908 F.2d 235 (7th Cir. 1990). In Hartford a tractor owner leased its truck and a driver to an interstate carrier. Id. at 236. The carrier dispatched the driver from Florida to Indiana to deliver frozen orange juice. Id. Before the driver left Florida, the owner instructed him to have a faulty Freon valve repaired after he delivered his load in Indiana. Id. The trailer leaked Freon throughout the trip and the buyer refused to accept the orange juice because it was too warm. Id.

¶30 After the driver informed the carrier of the refusal, it instructed him to take the juice to a cold-storage facility. Id. Complying with those instructions, the driver placed the juice in storage. Then, the driver took the trailer to have the Freon valve repaired. Id. The next day the driver got into an accident while on his way to pick up the trailer. Id. Thereafter, pursuant to the carrier's instructions, the driver

12

made another attempt to deliver the orange juice and returned to Florida with it after the juice was refused. Id. at 236-37.

¶31 At issue in Hartford was whether the truck's non-trucking insurer was required to indemnify the other insurer. The non-trucking insurance policy contained a clause excluding coverage when the truck was "being used in the business of any person or organization to whom the automobile is rented." Id. at 237. Applying Wisconsin law, the court determined that this language was unambiguous. Id. at 238.

¶32 The Hartford court explained that "'in the business of an . . . organization to whom an automobile is rented' clearly refers to occasions when the truck is being used to further the commercial interests of the lessee." Id. at 239. Because the truck driver had not completed his delivery for the carrier and was on his way to pick up his trailer for delivery, the court concluded that the truck was being used to further the business interest of the carrier and thus the exclusion in the non-trucking policy applied. Id.

¶33 The Wisconsin Court of Appeals applied the Hartford test in Martinez v. Jefferson Ins., 225 Wis. 2d 544, 550, 593 N.W.2d 475 (Ct. App. 1999). It determined that a driver was acting in furtherance of a lessee when he was on his way to return a billing ticket to the office as required by the lessee. Id. at 549-50. Accordingly, the driver was acting in the business of the lessee for purposes of insurance coverage. Id.

¶34 A number of other jurisdictions also follow the rule espoused by Hartford. See, e.g., Empire Fire & Marine Ins. Co.

13

v. Brantley Trucking, Inc., 220 F.3d 679, 682 (5th Cir. 2000); National Continental Ins. Co. v. Empire Fire & Marine Ins. Co., 157 F.3d 610, 612 (8th Cir. 1998); Planet Ins. Co. v. Anglo American Ins. Co., Ltd., 711 A.2d 899, 902 (N.J. App. Div. 1998); Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co., 699 A.2d 482, 495 (Md. Ct. Spec. App. 1997); Lime City Mut. Ins. Ass'n v. Mullins, 615 N.E.2d 305, 308 (Ohio Ct. App. 1992). Likewise, we adopt Hartford's interpretation of the phrase "in the business of" as it presents a clear rule that is consistent with the plain language of the exclusion.

¶35  Not all repairs and maintenance to a leased semi-tractor further the commercial interest of the lessee. Hartford demonstrates that repairs are in furtherance of a lessee's commercial interests when they are necessary to allow the semi-tractor to continue to accept and complete hauls for the lessee. In Hartford, the broken Freon valve hampered the trucker's ability to deliver the orange juice, causing the buyer to reject the orange juice because it was too warm. Hartford, 908 F.2d at 240. Accordingly, the court rejected the argument that the repair was not necessary for the lessee's business. Id.

¶36  The principle that obtaining necessary repairs is in furtherance of a lessee's business is also illustrated in Ehlers v. Automobile Liability Co., 169 Wis. 494, 173 N.W. 325 (1919). In that case, the driver was not on his route, had quit for the day and was driving to a repair shop when he was involved in an accident. Id. at 498. The vehicle was covered by an indemnity bond, which provided coverage "while said motor vehicle is being

14

operated in the service of a common carrier." Id. at 495. The court determined that the coverage applied because the vehicle was "running to a repair shop to receive the repairs necessary to enable it to continue its service as a common carrier." Id. at 498.

¶37 Repairs may also be in furtherance of a lessee's commercial interest when they are being done to comply with the lessee's orders or the lessor's contractual duties.[5] See Freed v. Travelers, 300 F.2d 395 (7th Cir. 1962) (driver's trip to a repair shop was part of the lessee's business when the lease required the driver to keep the tractor ready at all times for the use of the lessee); National Continental Ins. Co., 157 F.3d at 612 ("To the extent that [lessor] was executing his contractual duties, he was clearly acting 'in the business of'

---

[5] We acknowledge that not all jurisdictions agree that a lessor is acting in the interests of the lessee when it is fulfilling its contractual duties. For example, in Neal v. St. Paul Fire & Marine Ins. Co., 250 N.W.2d 648 (Neb. 1977), the Nebraska Supreme Court determined that bobtail coverage did not apply when the owner was getting maintenance work done on the truck pursuant to its contractual duties. It explained:

> While the carrier derived some benefit from the fact that the plaintiff attended to the maintenance of the tractor between trips, since that was essential to the continued use of the tractor in hauling commodities, the servicing and maintenance of the tractor was the responsibility of the plaintiff. The maintenance of the tractor was the "business" of the plaintiff, not that of the carrier.

Id. at 650. We find this reasoning unpersuasive as it is based on a narrower construction of the term "in the business of" than the one we adopt from Hartford.

15

[the lessee] and thus outside the scope of [non-trucking insurance] coverage."); Carriers Ins. Co. v. Griffie, 357 F. Supp. 441, 442 (W.D. Pa. 1973) (truck was being "used in the business" of lessee when the lessee requested that lessor get equipment inspected at a certain inspection station selected by the lessee and an accident occurred while at that station); Planet Ins. Co., 711 A.2d at 903 (tractor was being used in furtherance of lessee when it was on its way home after obtaining "repair[s] pursuant to the terms of the lease so that it could be used in [lessee's] business").

¶38 In essence, both parties agree that the Hartford test applies. They disagree about how the facts here apply to that standard. As illustrated by the cases discussed above, whether a repair is in furtherance of a carrier's commercial interest depends on the totality of the circumstances. It is a fact-intensive inquiry that will not always be amenable to summary judgment. See, e.g., Martinez, 225 Wis. 2d at 548 (noting that the issue of whether the truck was being operated for the lessee's business at the time of the accident required a factual conclusion). Relevant considerations include the terms of the lease agreement, any instructions from the lessee, and the nature and extent of the repairs.

¶39 Here, the lease required that the lessor "[m]aintain[] the equipment in the state of repair required by all applicable regulations." Acceptance asserts that the repairs were necessary to comply with 49 C.F.R. § 396.3(a), which requires all parts and accessories to be in a safe and proper operating

16

condition, and 49 C.F.R. § 396.7(a), which prohibits commercial motor vehicles from being operated in a condition likely to cause an accident or breakdown.

¶40 Contrary to Acceptance's assertions, the undisputed facts in the record establish that the repairs to the grille and oil filler tube were not required to comply with the federal regulations. The record contains the report of the state trooper who inspected the semi-tractor after the accident. Federal regulations require the trooper to mark the semi-tractor out-of-service if the condition of the vehicle or equipment would likely cause an accident or a breakdown. 49 C.F.R. § 396.9(c). Rather than marking the semi-tractor out-of-service, the trooper indicated in his inspection report that there were no violations and permitted Zeverino to continue on to Eau Claire. Because there is no evidence in the record which indicates that the repairs were necessary to comply with federal regulations, there is no support for the argument that the repairs were necessary to fulfill Zeverino's contractual duties.

¶41 Acceptance further contends that because the lease gave exclusive possession, control, and use of the semi-tractor to Taylor Truck Line, that Zeverino's actions were necessarily in the business of Taylor Truck Line. Again, we disagree.

¶42 That language in the lease is required by federal regulations governing motor carriers. 49 C.F.R. § 376.12(c) (formerly 49 C.F.R. § 1057.12) (requiring the lease to provide that "the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration

17

of the lease."). As the Seventh Circuit explained in Hartford, the requirement was intended "to safeguard the public by preventing authorized carriers from circumventing applicable regulations by leasing the equipment and services of independent contractors exempt from federal regulation." 908 F.2d at 238. However, it does not prevent indemnification of the lessee by the lessor. Id. (citing Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U.S. 28, 40 (1975)).

¶43 When a lease includes a clause requiring the lessor to obtain bobtail coverage, it clearly contemplated a situation where the vehicle, "though rented, would not be engaged 'in the business' of another." Hartford, 908 F.2d at 231. Accordingly, the fact that the lease gave Taylor Truck Line exclusive possession, control, and use of the semi-tractor is not dispositive of whether the semi-tractor was operating in Taylor Truck Line's business at the time of the accident.[6]

¶44 The facts also demonstrate that Zeverino was not acting pursuant to orders from Taylor Truck Line at the time of the accident. Zeverino testified that he was not on duty on the day of the accident. It is undisputed that Taylor Truck Line had not ordered him to have the repairs done and that Taylor Truck Line was unaware that he was doing so.

---

[6] Acceptance also advances the argument that the differing amounts which the two insurance companies charged for their premiums demonstrate that its policy was intended to have very limited coverage. We decline to consider this argument as the record is silent on the methods and considerations employed in setting the premiums.

18

¶45 Acceptance references the fact that Zeverino had indicated in his Daily Trip Log that he was "driving" prior to the accident and "on duty" at the scene of the accident, to suggest that Zeverino was working on behalf of Taylor Truck Line while he was on his way to obtain the repairs. These references are not persuasive. Federal regulations require drivers to keep daily logs of their driving status. 49 C.F.R. § 395.8. Under the regulations, "driving" means "all time spent at the driving controls of a commercial motor vehicle in operation." 49 C.F.R. § 395.2. It does not indicate whether the driving is being done for personal or business reasons.

¶46 Likewise, under the federal regulations the notation of "on duty" in a log book is appropriate for "[a]ll time inspecting, servicing, or conditioning any commercial motor vehicle at any time" and "[a]ll time repairing, obtaining assistance, or remaining in attendance upon a disabled commercial motor vehicle." 49 C.F.R. § 395.2. It does not indicate whether those functions are necessary or being done on behalf of a business. Accordingly, we reject Acceptance's argument that the log book indicates that Zeverino was acting in the business of Taylor Truck Line at the time of the accident.

¶47 Finally, we are not persuaded that the repairs were necessary to enable the semi-tractor to continue service for Taylor Truck Line. The parts being repaired on the semi-tractor were its grille and an oil filler tube. Both repairs were completed in approximately an hour.

¶48 The damaged grille did not put the semi-tractor out of service or prevent Zeverino from accepting or completing hauls for Taylor Truck Line. The record reflects that Zeverino had been doing so for over a month during the time between the damage to the grille and its repair. Acceptance asserts that Zeverino's testimony that the grille was starting to fall apart indicates that it would need to be repaired at some point. However, Zeverino's testimony on this point was vague and he did not provide further details. The inspection of the semi-tractor after the accident revealed no violations and placed no limitations on the continued operation of the vehicle.

¶49 In sum, because the repairs were not required by the lease agreement, were not done pursuant to orders by Taylor Truck Line, and were not necessary for the semi-tractor to continue its service, we conclude that Zeverino was not acting in furtherance of Taylor Truck Line's commercial interest at the time of the accident. Accordingly, the accident does not fall within the exclusion in section 14(b) of Acceptance's policy.

IV.

¶50 Acceptance also points to section 14(a) of its policy as a clause excluding coverage. That exclusion provides that the policy does not cover the semi-tractor "[w]hile being operated, maintained or used to carry property in any business or en route to or from such business purpose."

¶51 Acceptance reads section 14(a) as excluding the semi-tractor from coverage when it is being "operated, maintained, or used . . . or en route to or from such business purpose.

20

Acceptance contends that the phrase "such business purpose" refers back to maintenance, indicating that maintenance is a business purpose.

¶52 However, under Acceptance's interpretation of section 14(a), operation and use would also constitute business purposes. As recognized by the court of appeals, if that were the case, Acceptance's policy would not cover any situations in which the semi-tractor was being driven. Casey, 346 Wis. 2d 111, ¶32. Indeed, it is unclear that Acceptance's policy would ever apply if we were to adopt the interpretation it suggests. Wisconsin has a strong public policy against illusory coverage. Meyer v. Classified Ins. Co., 192 Wis. 2d 463, 468-69, 531 N.W.2d 416 (Ct. App. 1995).

¶53 In contrast, Great West asserts that section 14(a) should be read to exclude the semi-tractor from coverage when it is being operated to carry property, maintained to carry property, or used to carry property, or when it is en route to or from those activities. In other words, 14(a) would exclude the semi-tractor from coverage when it is en route to obtain maintenance if that maintenance is necessary to allow the semi-tractor to carry property.

¶54 We agree with Great West's interpretation of section 14(a). It comports with the plain language of the policy and affords the insured some coverage. To the extent that section 14(a) is ambiguous, we construe ambiguity against the insurer, Acceptance. Marlowe, 346 Wis. 2d 450, ¶48.

21

¶55 Applying section 14(a) to the facts of this case, we conclude that it does not exclude coverage. Here, Zeverino was on his way to have the grille and oil filler tube on the semi-tractor replaced when the accident occurred. It is undisputed that the semi-tractor could still carry loads without the repairs. Thus, the repairs were not necessary to allow the semi-tractor to carry property and the exclusion in section 14(a) of Acceptance's policy does not apply.

¶56 Acceptance has identified no other possible exclusions that would apply to preclude coverage. As it has conceded that there was an initial grant of coverage, we conclude that Acceptance is responsible for providing coverage for the claims resulting from the accident.

¶57 Finally, we turn to address Great West's insurance policy. The parties agree that the Great West policy provides coverage for the accident only if Zeverino was acting in the business of Taylor Truck Line at the time that the accident occurred. As discussed above, we have determined that he was not. Therefore, we conclude that the Great West policy provides no coverage for the claims resulting from the accident.

V.

¶58 We determine that neither of the exclusions in Acceptance's policy precludes coverage. The facts of record do not support the application of exclusion 14(b). Zeverino was not using the semi-tractor "in the business of" Taylor Truck Line because the repairs here did not further Taylor's commercial interests. There is nothing in the record that shows

22

the repairs were required by the lease. Additionally, the repairs were not done pursuant to orders from Taylor Truck Line, and they were not necessary for the semi-tractor to continue its service.

¶59 Further, Acceptance's argument that coverage is excluded because Zeverino was en route to the business purpose of obtaining maintenance reflects an overly expansive interpretation of the text of exclusion 14(a). Like the court of appeals, we are concerned that its interpretation may render coverage illusory. Instead, in examining the text of exclusion 14(a) we determine that it refers to maintenance necessary to allow the semi-tractor to carry property. It is undisputed that the semi-tractor could and did carry loads without the repairs to the grille and oil filler tube.

¶60 Because the exclusions in Acceptance's policy do not apply, we conclude that its non-trucking use policy provides coverage for the accident. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

23