COURT OF APPEALS
DECISION
DATED AND FILED

March 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP786**

**STATE OF WISCONSIN**

Cir. Ct. No.  2023CV3781

**IN COURT OF APPEALS
DISTRICT I**

LIZBETH HERNANDEZ RAMIREZ,

PLAINTIFF-APPELLANT,

COMPCARE HEALTH SERVICES INSURANCE CORPORATION,

INVOLUNTARY-PLAINTIFF,

V.

VOYAGER INDEMNITY INSURANCE COMPANY, DOORDASH, INCORPORATED, FIRST CHICAGO INSURANCE COMPANY AND XAVIER D. CARUTHERS,

DEFENDANTS-RESPONDENTS.

APPEAL from orders of the circuit court for Milwaukee County: J.D. WATTS, Judge. *Orders affirmed; order reversed and cause remanded for further proceedings*.

Before White, C.J., Donald, and Geenen, JJ.

¶1    GEENEN, J.  This case arises out of an automobile accident where Xavier D. Caruthers, a delivery driver for DoorDash, Incorporated ("DoorDash"), collided with a vehicle in which Lizbeth Hernandez Ramirez was a passenger. Ramirez sued Caruthers and his personal insurer, First Chicago Insurance Company ("First Chicago"), as well as DoorDash and DoorDash's insurer, Voyager Indemnity Insurance Company ("Voyager").

¶2    The circuit court granted declaratory and summary judgment in favor of First Chicago, Voyager, and DoorDash.  The court concluded that coverage was excluded under the First Chicago policy because Caruthers was using his vehicle for a "delivery related business" at the time of the accident.  It further concluded that coverage was also excluded under the Voyager policy (and, therefore, there was no liability for DoorDash) because Caruthers was not actively fulfilling a delivery request at the time of the accident.

¶3    We reverse the circuit court's order granting declaratory and summary judgment to First Chicago.  We conclude that the language of the policy exclusion relied upon by First Chicago and the circuit court is ambiguous, and we construe that ambiguity in favor of coverage.  We affirm the circuit court's orders granting declaratory and summary judgment to Voyager and DoorDash.

BACKGROUND

¶4    On December 19, 2020, Caruthers collided with the car in which Ramirez was a passenger.  At the time of the accident, Caruthers had just completed several food deliveries for DoorDash and was on his way to downtown Milwaukee to relocate to a busier area.  Although Caruthers was not actively making a delivery at the time of the accident, he did have the DoorDash app open on his phone while he was relocating.  Ramirez filed a complaint against Caruthers, DoorDash, and

their insurers for bodily injuries and emotional distress she allegedly sustained as a result of the accident, seeking compensatory damages and other relief.

¶5 Two different insurance policies are at play in this case. The first is the personal policy Caruthers had through First Chicago. Under that policy, liability coverage is excluded "[f]or **bodily injury** or **property damage** incidental to or emanating from the … operation of any vehicle ... for **delivery related business**[.]" "**Delivery related business**" is defined in the policy:

> 11. **Delivery related business** means the ownership, maintenance or operation of any **auto** while it is being used to carry … food for compensation or a fee, including but not limited to:
>
> a. The pickup or delivery or return from a pick-up of delivery of … food;
>
> b. The pickup or delivery or return from a pick-up of delivery of … food, whether or not passengers are present in the **auto**, in conjunction with any service or company;
>
> c. The pickup or delivery or return from a pick-up of delivery of … food, whether or not passengers are present in the **auto**, in conjunction with any logistics company, delivery services applications, transportation network application or companies. Examples of logistics company, delivery services applications, transportation network application or companies include but are not limited to UberEATS, GrubHub, and Amazon Flex.

¶6 The second policy was issued by Voyager to DoorDash, and it contained an endorsement providing coverage to delivery drivers "for an **accident** occurring during the **delivery operator's term of coverage**." "**Term of coverage**" as defined in the policy applies only while the delivery driver is "actually fulfilling a delivery request made through a **delivery application**," and:

1. Begins operating a **covered auto** for delivery;

2. Is using the covered **auto** only for the purpose of fulfilling a delivery request(s) made through the **named insured's delivery application**; and

3. Is on a direct and uninterrupted path:

   a. To only the location of pickup indicated on the **delivery application**; or

   b. To only the location of delivery indicated on the **delivery application**.

   The **term of coverage** ends when the **delivery operator** has completed the delivery request(s) made through the **delivery application**.

¶7 Voyager filed a motion for declaratory judgment, joined by DoorDash (who subsequently filed its own motion for summary judgment), arguing that the Voyager policy excluded coverage because Caruthers was not making a delivery at the time of the accident. First Chicago filed a motion for declaratory and summary judgment, arguing that its policy excluded coverage because Ramirez's damages were "incidental to or emanating from" Caruthers's use of his vehicle for "delivery related business." The circuit court granted these motions, agreeing that both policy exclusions applied, and determined that Caruthers was not entitled to coverage under either the First Chicago or Voyager policies.

¶8 Ramirez appeals.

## DISCUSSION

¶9 On appeal, Ramirez argues that First Chicago must provide coverage because the policy language was ambiguous, and because Caruthers was not actively making a delivery at the time of the accident. Alternatively, Ramirez argues that Voyager must provide coverage as a matter of public policy. Whether to grant a declaratory judgment is generally within the discretion of the circuit court, but

4

when the exercise of that discretion turns on a question of law, such as the interpretation of an insurance policy, the standard of review is de novo. *Talley v. Mustafa*, 2018 WI 47, ¶13, 381 Wis. 2d 393, 911 N.W.2d 55. Summary judgments are also reviewed de novo, and we use the same methodology as the circuit court. *Id.*, ¶12. Summary judgment is appropriate when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

## I. The First Chicago policy exclusion is ambiguous, and we construe the ambiguity in favor of coverage.

¶10 We begin with Ramirez's argument that the First Chicago policy exclusion is ambiguous. The circuit court concluded that the policy language excluded the period of time where Caruthers was logged into the DoorDash app but was not engaged in a delivery, because Caruthers's relocating to downtown Milwaukee with the intent to continue accepting deliveries was "incidental to" the operation of his vehicle for "delivery related business." Ramirez asserts that this language is reasonably susceptible to an interpretation that it only excluded the times when Caruthers was actively driving to pick up or deliver a food order. We agree with Ramirez.

¶11 "Judicial interpretation of a contract, including an insurance policy, seeks to determine and give effect to the intent of the contracting parties." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. "Insurance policies are construed as they would be understood by a reasonable person in the position of the insured." *Id.* "Courts will interpret the words of an insurance contract against the insured when the insurer's interpretation conforms to what a reasonable person in the position of the insured would have understood the words to mean," but "[i]f a policy is ambiguous as to coverage, it will be construed in favor of the insured." *State Farm Mut. Auto. Ins. Co. v.*

*Langridge*, 2004 WI 113, ¶15, 275 Wis. 2d 35, 683 N.W.2d 75. Language in an insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.*

¶12 This case involves the applicability of policy exclusions.[1] "Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain." *American Girl*, 268 Wis. 2d 16, ¶24; *see also Cardinal v. Leader Nat'l Ins. Co.*, 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992) ("Exclusions are to be narrowly construed against the insurer, especially if they are uncertain as to effect."). This is because insurers draft the policies, and therefore, "have the advantage over insureds[.]" *Folkman v. Quamme*, 2003 WI 116, ¶16, 264 Wis. 2d 617, 665 N.W.2d 857.

¶13 The First Chicago policy excludes "**bodily injury** or **property damage** incidental to or emanating from the ownership, maintenance or operation of any vehicle ... for **delivery related business**[.]" "**Delivery related business** means the … operation of any **auto** while it is being used to carry ... food for compensation or a fee, including but not limited to ... [t]he pickup or delivery or return from a pick-up of delivery of ... food[.]"

¶14 First Chicago and the circuit court focus on the language "incidental to or emanating from." First Chicago argues that this language works to exclude "any activity in any way, shape or form related to a food delivery service or business." In our view, this language, and First Chicago's interpretation of it, is so

---

[1] The parties do not dispute that the First Chicago policy makes an initial grant of coverage. *See American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 12, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65 (setting forth the procedure by which courts interpret insurance policies and resolve coverage disputes, which requires the court to determine (1) whether the policy makes an initial grant of coverage, (2) whether any exclusions preclude coverage, and (3) if any exceptions to those exclusions exist that would reinstate coverage).

"ambiguous or obscure" in its effect "that it befuddles the understanding and expectations of a reasonable insured." *Folkman*, 264 Wis. 2d 617, ¶20 (citation omitted). A reasonable insured would not know how broadly to read this language and could reasonably expect coverage under the First Chicago policy while driving in Milwaukee and not actively engaged in a food delivery (e.g., by accepting a delivery on the DoorDash app). When Caruthers signed up with DoorDash, First Chicago told him he would need to have delivery insurance, and DoorDash provided delivery insurance through Voyager. Caruthers reasonably believed that between the two policies, he would be covered whether or not he was making deliveries—the Voyager policy covered him when he was making deliveries and the First Chicago policy covered him when he was not making deliveries.

¶15 We agree with Ramirez that "[t]he First Chicago policy does not state that it excludes the period of time where someone is logged into the app but not actively making deliveries, and Caruthers had no reason to believe it would." Basing insurance coverage on whether or not an app was open on Caruthers's phone, especially when no explicit language exists in the policy to address such a situation, would lead to absurd results that frustrate an insured's reasonable expectations. Therefore, having concluded that the language of the First Chicago policy exclusion

is ambiguous, we construe the exclusion narrowly and resolve the ambiguity in favor of the insured.[2]

## II. We do not resolve Ramirez's public policy argument related to the Voyager policy exclusion.

¶16    Having concluded that the First Chicago policy does not exclude coverage in this case, we turn to the Voyager policy. On appeal, Ramirez states that her argument with respect to the Voyager policy is "alternative" to her argument that the First Chicago policy provides coverage. Specifically, Ramirez's argument related to the Voyager policy is premised on public policy considerations that would arise if a DoorDash driver's personal insurer refused to cover liability for the period when the driver's DoorDash app is open but they are not actively fulfilling a delivery request. Ramirez argues that such a situation would create a coverage gap where delivery drivers are uninsured for significant periods of time while the delivery app is open but the driver has not yet accepted a delivery request. Ramirez's arguments highlight very real public policy concerns, but because we conclude that there is coverage under the First Chicago policy, the public policy concerns related to the

---

[2] Though we conclude that the First Chicago policy exclusion is ambiguous, we question the reasonableness of First Chicago's interpretation of "incidental to or emanating from." "Delivery related business" is not the only activity listed in the exclusion. For example, the list of excluded activities also includes "any other business or occupation of an insured person or insured operator." No reasonable person would believe that this language excludes damages from accidents that occur while the insured is driving to work, an activity that is surely related in some "way, shape or form" to "any business or occupation of an insured person[.]" First Chicago's interpretation is so unlimited in its breadth that it leads to absurd results and eliminates the reasonable expectations of the insured. *Casey v. Smith*, 2014 WI 20, ¶26, 353 Wis. 2d 354, 846 N.W.2d 791 (explaining that insurance policies "should be construed to avoid absurd or unreasonable results").

Voyager policy do not arise, and therefore, we need not and do not resolve Ramirez's public policy argument.[3]

## CONCLUSION

¶17 We conclude that the First Chicago policy exclusion is ambiguous, and we construe that ambiguity in favor of coverage for Caruthers. Accordingly, we reverse the circuit court's order granting First Chicago's motion for declaratory and summary judgment, and remand the matter for further proceedings.

¶18 Having concluded that the First Chicago policy exclusion does not apply, we need not and do not resolve Ramirez's public policy argument related to

---

[3] While we do not resolve Ramirez's public policy arguments related to the Voyager policy, we observe that these public policy concerns are significant. There is no coverage gap in this case, but it is foreseeable that such a gap could arise in future cases (e.g., when the personal insurer's policy more clearly excludes the period of time when the delivery driver has the delivery app open but is not actively making deliveries).

As Ramirez explains, there was a parallel coverage gap for transportation network company ("TNC") drivers transporting passengers for services such as Uber and Lyft. TNC drivers were without liability insurance while their app was open but were not actively engaged in transporting passengers. Many states, including Wisconsin, responded to this coverage gap by enacting legislation that requires insurance coverage during this gap. Under WIS. STAT. § 440.48 (2023-24), "[a] participating driver, or a [TNC] on the driver's behalf," must maintain liability insurance for both the period of time while the driver is actually transporting someone and the period of time "[w]hile the driver is logged on to the [TNC's] digital network" and is "available to receive transportation requests but is not engaged in transportation network services[.]" Additionally, if for some reason insurance coverage lapses during either period, "insurance maintained by a [TNC] shall provide the coverage required under this subsection beginning with the first dollar of a claim and have the duty to defend the claim." Sec. 440.48(d) (2023-24).

We generally agree with Ramirez that there is no practical difference between delivery drivers and TNC drivers in that both drivers are just as capable as the other of causing an accident that injures a third party while the driver is logged into the app but has not yet accepted a delivery or transportation request, and the gap in coverage for this period in time is addressed in the context of TNC drivers but not delivery network drivers like Caruthers. Although we express no opinion as to how such a coverage gap should be addressed in the context of delivery network companies such as DoorDash, we recognize that the Wisconsin legislature has already expressed its policy preference that such coverage gaps should not exist.

coverage under the Voyager policy.  Accordingly, the circuit court's orders granting declaratory and summary judgment to Voyager and DoorDash are affirmed.

*By the Court.*—Orders affirmed; order reversed and cause remanded for further proceedings.

Recommended for publication in the official reports.